UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LIMU COMPANY, LLC,

    Plaintiff,

v.                                      Case No: 6:12-cv-347-Orl-TBS

ANDREW BURLING and NANCY
BURLING,

    Defendants.

## ORDER[1]

Pending before the Court is Plaintiff, LIMU Company, LLC's (LIMU"), Renewed Motion for Partial Summary Judgment as to Count I of the Complaint. (Doc. 42.) Defendants Andrew Burling and Nancy Burling (collectively, the "Burlings") have not responded to the motion and the time within to do so has expired.[2] Because the Burlings have not responded, the Court may consider the motion unopposed and consider the facts undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2); M.D. Fla. Local Rule 3.01(b).

I. **Statement of Facts**

LIMU is a network marketing company which sells and markets nutrition and health

---

[1] The parties consented to have this case referred to a magistrate judge and on May 10, 2013, the district judge referred this case to the undersigned for all further proceedings and the entry of a final judgment in accordance with 28 U.S.C. § 636 (c) and Fed. R. Civ. P. 73. (Doc. 37.)

[2] The Burlings filed a response to LIMU's first motion for summary judgment. (Doc. 35). When asked at a June 25, 2013 hearing on a different motion, counsel for the Burlings stated that he did not intend to file a response to LIMU's renewed motion. LIMU's renewed motion for summary judgment supersedes LIMU's first motion, and thus the Court does not consider the Burlings' response to the previous motion.

beverages through a network of independent distributors.[3]  The Burlings are experienced distributors in the marketing field, with whom LIMU executed a confidential Front Line Membership Agreement including two addenda (the "Agreement") on May 17, 2011. Pursuant to the Agreement, the Burlings were given a top position in LIMU's ranks based upon their experience and their representations to LIMU that their experience and connections would generate growth, company exposure, and increased revenue for LIMU.  In return, the Burlings promised to help market and sell LIMU's products and recruit other individuals to become independent distributors for LIMU.  Paragraph 6 of the Agreement provides in part:

> g. [The Burlings] shall demonstrate the ability to grow and lead his/her organization without upline[4] or corporate involvement;
>
> h. [The Burlings] shall hold regularly scheduled meetings, training sessions and conference calls;
>
> i. [The Burlings] shall attend all major Company sponsored events;
>
> j. [The Burlings] shall assume a general leadership and support role for his/her entire Downline;
>
> k. [The Burlings] shall maintain an active, hands on leadership role in training, supervising and assisting his/her Downline;
>
> l. [The Burlings] shall achieve and maintain the fully qualified, Paid As rank of 20K within 90 days of submitting your LIMU Member Application;
>
> m. [The Burlings] shall achieve and maintain the fully qualified, Paid As rank of 50K within 180 days of submitting his/her LIMU Member Application;

---

[3] Unless otherwise stated, all facts are as alleged in LIMU's Complaint (Doc. 1).
[4] A distributor's "upline" refers to the individuals who recruited them to become a distributor.  A distributor's "downline" refers to the individuals that distributor recruits.

> n. [The Burlings] shall maintain high visibility, including submission of his/her picture for recognition and publication on the LIMU website and newsletter as soon as [the Burlings] achieves the rank of 20K and each subsequent rank advancement;
>
> o. [The Burlings] shall demonstrate leadership by example by:
>
>> i. Continually enrolling new Members on his/her Front Line;
>>
>> ii. Continually developing new 5K's and 20K's;
>>
>> iii. Continually developing new "growth" legs.
>
> p. [The Burlings] shall conduct him/herself and all his/her dealings with the LIMU Corporate Team, other IMs, and Customers according to the highest standards of honesty, integrity, fairness and professionalism.

The second of the two addenda to the Agreement ("Addendum Two") provides for the Burlings to receive a One-Time Signing Bonus of $100,000 upon their execution of the Agreement and enrollment as LIMU members. Addendum Two incorporates Paragraph 6 of the Agreement by reference and goes on to say:

> In addition to the conduct, functions, and performance criteria set forth in the [Agreement], the Burlings shall satisfy each of the criteria set forth in subparagraphs a. and b. below. Should the Burlings fail to meet these criteria, they shall repay LIMU the full amount of the One-Time Signing Bonus set forth in preceding paragraph 2.a. and all Bridge Compensation set forth in paragraph 2.b.
>
> a. Five Year Commitment. The Burlings shall remain Active Independent Members of LIMU for a minimum of five years from the date of this Agreement.
>
> b. Benchmarks. The Burlings shall achieve the following in the time frames specified below:
>
>> i. Paid as rank of 100K by the end of Month 1
>>
>> ii. Paid as rank of 100K by the end of Month 2

      iii.  Paid as rank of l00K by the end of Month 3

      iv.  Paid as rank of l00K by the end of Month 4

      v.  Paid as rank of l00K by the end of Month 5

      vi.  Paid as rank of 200K by the end of Month 6

  a.  "Active" Requirement.  Notwithstanding any definition of the term "Active" as set forth in the LIMU Prosperity Plan, Policies and Procedures, or any other document, as used herein, in order to be an "Active" Independent Member of LIMU, as required in paragraph 3.a. above, the Burlings shall meet each of the following requirements:

      i. The Burlings shall remain in good standing as LIMU Independent Members;

      ii. The Burlings shall fulfill the Conduct and Functions set forth in paragraph 6 of the [Agreement];

      iii. The Burlings shall remain in compliance with the terms of the LIMU Independent Member Agreement, LIMU's Policies and Procedures, the [Agreement], and FLMA Addendum-One, and this Addendum-Two.

The Burlings failed to perform any of their duties under the Agreement.  They did not demonstrate an ability to grow their organizations; did not hold conferences, meetings, training sessions or calls; did not attend major LIMU sponsored events; did not maintain an active leadership role in supporting, training, supervising, or assisting their downlines; did not maintain required minimum ranks; did not maintain high LIMU visibility; and made only minimal efforts to enroll new members or develop their downlines.  (Docs. 34-1, 39-1.)  On November 2, 2011, LIMU sent a letter to the Burlings informing them that they were in breach of the Agreement and demanding repayment of the $100,000 One-Time Signing Bonus.  (Doc. 1-1 at 4-5.)  The Burlings have not re-paid the money.

On January 25, 2012, LIMU wrote another letter to the Burlings demanding that they submit to mediation, as required by Section 13.b of the Agreement, which states:

13. Dispute Resolution.

> a. Choice of Law. This Agreement shall be governed by the law of the State of Florida, without regard to principles of conflicts of laws.
>
> b. Mediation. Prior to instituting legal action, the Parties shall meet in good faith and attempt to resolve any dispute arising from or relating to the Agreement through non-binding mediation.  The aggrieved Party shall submit written notice to the other Party seeking mediation.  One individual who is mutually acceptable to the Parties shall be appointed as mediator.  If the Parties are unable to agree on a mediator within 14 days from the date on which the aggrieved Party submits written notice to the other Party, the aggrieved Party shall request a Mediator be appointed by the American Arbitration Association.  The mediation shall occur within 60 days from the date on which the mediator is appointed. The mediator's fees and costs, as well as the costs of holding and conducting the mediation, shall be divided equally between the parties.  Each party shall pay its portion of the anticipated shared fees and costs at least 10 days in advance of the mediation.  Each party shall pay its own attorney's fees, costs and expenses associated with conducting and attending the mediation.  Mediation shall be held in the LIMU corporate offices and shall last no more than two business days.
>
> b. Litigation, Jurisdiction and Venue. If the Parties fail to resolve their differences through mediation, the Parties consent to exclusive jurisdiction and venue before the United States District Court for the Middle District of Florida, residing in Orlando, Florida, or the Florida State Courts residing in Seminole County, State of Florida. Each Party shall pay its own attorney's fees, litigation costs, and expenses. The Parties waive claims against one another for incidental, consequential, and exemplary damages, even if a Party advises the other in advance of the possibility or likelihood that it will incur such damage in the event of a breach or nonperformance.

- 5 -

The Burlings did not respond to the letter or otherwise consent to mediation.

LIMU filed its Complaint on March 5, 2012 alleging breach of the Agreement, unjust enrichment, and promissory estoppel.  On February 6, 2013, LIMU served its First Set of Interrogatories, First Request for Production of Documents and First Request for Admissions on the Burlings.  (Doc. 28-1, 28-2, Doc. 34-1).  The Burlings failed to respond to these discovery requests.  (Id. ¶ 3).

The parties agreed to take the Burlings' depositions in Wisconsin on March 11, 2013, but on March 8, 2013 the Burlings informed LIMU that they would be unable to attend the depositions because Nancy Burling had a medical condition.  (Id. ¶ 5).  Despite requests by LIMU, the Burlings have not provided new dates for their depositions.  (Id. ¶ 7).

On March 11, 2013, LIMU filed a motion to compel the Burlings to answer the interrogatories, produce the documents requested in its first request for production, and appear for the taking of their depositions.  (Doc. 28).  The Burlings did not file a response and the Court granted the motion.  (Doc. 33).  The Court's Order allowed the Burlings fourteen days to answer LIMU's interrogatories, produce all documents responsive to the request for production, and provide dates for the taking of their depositions.  (Id.).

Because the Burlings did not comply with the Court's Order, LIMU filed another motion to compel for sanctions and contempt, which the Court heard on June 25, 2013.  (Docs. 41, 44).  After listening to counsel for the parties, the Court found that the Burlings had violated its earlier Order compelling discovery.  (Docs. 44, 45).  The Court ordered the Burlings to immediately furnish all discovery responsive to LIMU's interrogatories and requests for production; determined to award attorney's fees to LIMU; and sanctioned the

Burlings by prohibiting them from offering evidence in support of their affirmative defenses. (Id.).

On April 11, 2013, LIMU filed its first motion for partial summary judgment on Count I of its Complaint. (Doc. 34). In the motion, LIMU argued that the Burlings failure to respond to its request for admissions had resulted in the Burlings admitting: the validity of the Agreement, their failure to meet the agreed upon minimum performance thresholds, and their failure to repay the $100,000 bonus. (Id. at 2). The Burlings filed a timely response to which they attached as Exhibit "B" their out-of-time responses to LIMU's requests for admissions. (Doc. 35-2). The Burlings did not file a motion asking to be relieved from their earlier admissions or for leave to file overdue responses to the requests for admissions. (Docket).

The Court denied LIMU's first motion for partial summary judgment because it failed to show that the Court had jurisdiction over this controversy. (Doc. 38). LIMU has now demonstrated that diversity of citizenship exists and the amount in controversy exceeds $75,000. (Docs. 39-1 ¶ 3, 15 ¶¶ 1-7.) Additionally, at the June 25, 2013 hearing, counsel for the Burlings stated that he does not contest LIMU's evidence that jurisdiction exists. Accordingly, the Court finds that it has jurisdiction over this action.

The case is back before the Court on LIMU's renewed motion for summary judgment on Count I of its Complaint, which seeks an award of damages based upon the Burlings failure to return the $100,000 bonus.

## II. Summary Judgment Standard

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing

Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)).  Which facts are material depends on the substantive law applicable to the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Evidence is reviewed in the light most favorable to the non-moving party.  Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356).

The moving party bears the burden of showing that no genuine issue of material fact exists.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  A moving party discharges its burden on a motion for summary judgment by showing the court that there is an absence of evidence to support the non-moving party's case.  Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate the existence of a genuine issue for trial.  Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("Conclusory allegations without specific supporting facts have no probative value.").  If material issues of fact exist that would not allow the Court to resolve an issue as a matter of law, the Court must not decide them, but rather, must deny the motion and proceed to trial.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).

### III. Requests for Admissions

LIMU argues that there is no genuine issue of material fact relating to its claim that the Burlings breached the Agreement because the Burlings are deemed to have admitted all of the elements in LIMU's requests for admissions.  Federal Rule of Civil Procedure

36(a) allows a party to serve on any other party, a written request to admit, for purposes of the pending action, the truth of any matters within the scope of Rule 26(b)(1) relating to facts, the application of law to fact, or opinions about either.  Unless the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney, the matter is admitted. Fed. R. Civ. P. 36(a)(3).  The purpose of the rule is "to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial." Perez v. Miami-Dade County, 297 F.3d 1255, 1264 (11th Cir. 2002) (quoting 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2252 (2d ed. 1994)). Once a matter is admitted it is conclusively established unless the Court, on motion, permits the admission to be withdrawn or amended.  Fed. R. Civ. P. 36(b).

The Burlings did not respond to LIMU's requests for admissions until approximately 78 days after they were served.  Consequently, the requests were admitted under Rule 36(a).  Although the Burlings did ultimately serve responses to the requests –which the Court will not consider, see n.2 above– they never filed a motion to withdraw or amend their earlier admissions pursuant to Rule 36(a).  LIMU has argued this point before in its reply to the Burlings' response to its first motion for partial summary judgment, and yet, to date, the Burlings have not filed such a motion.  Accordingly, all of LIMU's requests for admissions propounded to the Burlings are deemed admitted.

### IV. Count I of the Complaint

In a diversity action for breach of contract, the Court applies the law of the state in which the action arose.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Because the Burlings do not now challenge LIMU's contention that the Agreement is governed under Florida law, they concede the point.  Under Florida law, the elements

of a breach of contract claim are (1) the existence of a valid contract; (2) a material breach of that contract; and (3) resulting damages. <u>Vega v. T-Mobile USA, Inc.</u>, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing <u>Friedmand v. N.Y. Life Ins. Co.</u>, 985 So.2d 56, 58 (Fla. 4th DCA 2008). In evaluating the elements of breach of contract, Florida courts have explained that where a contract's terms are "clear and unambiguous, the language itself is the best evidence of the parties' intent and its plain meaning controls . . . ." <u>Pearson v. Caterpillar Fin. Servs. Corp.</u>, 60 So.3d 1168, 1171 (Fla. 4th DCA 2011).

The evidence submitted by LIMU, including the Burlings' admissions to pertinent averments in the complaint, their admissions to LIMU's request for admission, and the Declaration of Gary Raser (Doc. 39-1), establishes all of the elements necessary to prove a breach of the Agreement under Florida law. The parties made and entered into the Agreement and the Burlings did not meet the benchmarks they agreed to in the Agreement. The Burlings promised that if they did not meet the benchmarks in the Agreement then they would repay the $100,000. However, they have not paid the money to LIMU. Accordingly, all the elements of LIMU's breach of contract claim are satisfied.

### V. The Burlings' Affirmative Defenses

The Burlings pleaded six affirmative defenses to LIMU's Complaint. (Doc. 15 at 10-11). First, they contend that this dispute should be resolved by mediation which relief is not requested in the Complaint. Second, they allege bad faith and unclean hands. Third, the Burlings state that LIMU has interfered with the Burlings' relationships with their agents, representatives and third parties. Fourth, the Burlings allege that LIMU's claims are barred by its own conduct and actions. Fifth, they claim entitlement to a setoff based upon LIMU's interference in their relationships with others. Sixth, they assert that LIMU's Complaint fails to state a cause of action upon which relief can be granted. (Doc. 15 at

10-11.)

"An affirmative defense is an assertion raising new facts and arguments that, if proven, defeat the plaintiff's claim even if the allegations in [the] complaint are true." Sterten v. Option One Mortg. Corp., 479 F.Supp. 2d 479, 482 (E.D. Pa. 2007).  The Burlings bear the initial burden of showing that their affirmative defenses are applicable on LIMU's motion for summary judgment. Office of Thrift Supervision v. Paul, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997); see also Johnson v. Board of Regents of University of Georgia, 263 F.3d 1234, 1264 (11th Cir. 2001) (finding Intervenors waived argument by not raising in their opposition papers any and all arguments or defenses they felt precluded judgment in Plaintiffs' favor).  It is not LIMU's job to pierce the Burlings' affirmative defense; it is the Burlings' duty is to point to sufficient facts in the record that support their defenses.  See Nissan Motor Acceptance Corp. v. Sowega Motors Inc., No. 4:10-cv-111 (CDL), 2012 WL 3987417 *7 (M.D. Ga. Sept. 11, 2012).

The Burlings' affirmative defenses are insufficient in that they consist of conclusory statements unsupported by averments of fact. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) (noting that "conclusory allegations without specific supporting facts have no probative value" when considering defenses raised in response to a motion for summary judgment).  The Burlings have not submitted any affidavits, declarations, deposition transcripts or other evidence in support of their affirmative defenses, and they did not raise them in opposition to LIMU's motion for partial summary judgment. Consequently, the Burlings have not met their burden to prove their defenses. See Blue Cross and Blue Shield of Alabama v. Weitz, 913 F.2d 1544, 1552 (11th Cir. 1990) ("Even were Weitz correct as a substantive matter that certain of plaintiffs' claims are precluded by the statute of limitations, the inclusion of a vague allegation regarding the statute of

limitations in an answer would be insufficient to defeat a motion for summary judgment. . . . [T]here was no mention of the statute of limitations in the portion of the record related to the summary judgment motion."). Accordingly, the Burlings' affirmative defenses are not a bar to the entry of partial summary judgment on Count I of the Complaint.

### VI. Conclusion

Plaintiff, LIMU Company, LLC's Renewed Motion for Partial Summary Judgment as to Count I of the Complaint (Doc. 42) is **GRANTED**. LIMU shall recover the principal sum of $100,000 from the Burlings, jointly and severally, together with interest, costs and attorney's fees. The Clerk shall withhold entry of judgment pending resolution of the entire case.

**IT IS SO ORDERED.**

**DONE** and **ORDERED** in Orlando, Florida on July 9, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record